UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DOUGLAS D.,[1] | |
| Plaintiff, | Case No. 1:22-cv-00328-DKG |
| v. | **MEMORANDUM DECISION AND ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## INTRODUCTION

Plaintiff filed a Complaint with this Court seeking judicial review of the Commissioner's denial of his application for disability insurance benefits. (Dkt. 1). The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record. (Dkts. 12, 13, 14). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motion based on the record. Dist. Idaho L. Civ. Rule 7.1(d). For the reasons set forth below, the Court will affirm the decision of the Commissioner.

## BACKGROUND

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**MEMORANDUM DECISION AND ORDER – 1**

On August 13, 2019, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning March 1, 2019. (AR 13). Plaintiff's application was denied upon initial review on October 25, 2019, and again upon reconsideration on January 30, 2020. (AR 13). A hearing was conducted on June 4, 2021, before Administrative Law Judge ("ALJ") Stephen Marchioro. (AR 13, 30-61).[2]

After considering testimony from Plaintiff and a vocational expert, the ALJ issued a written decision on June 15, 2021, denying Plaintiff's application for disability benefits. (AR 13-24). Plaintiff appealed the ALJ's decision to the Social Security Appeals Council and the Appeals Council denied Plaintiff's request for review on June 10, 2022, making the ALJ's decision the final decision of the Commissioner. (AR 1-9). Plaintiff timely filed this action seeking judicial review of the ALJ's decision on August 1, 2022. (Dkt. 1). The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

On the alleged onset date, Plaintiff was sixty-one years of age. (AR 22). He has at least a high school education and reported past work as a programmer. (AR 249). Plaintiff alleges disability due to various physical impairments including: tinnitus, bilateral hearing loss, ectodermal dysplasia with dry eye syndrome, status-post bilateral eye surgeries. (AR 16).

## THE ALJ'S DECISION

Disability is the "inability to engage in any substantial gainful activity by reason

---

[2] The hearing was conducted by video due to the Coronavirus Pandemic of 2019 (COVID-19). (AR 13).

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Here, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 15). At step two, the ALJ determined Plaintiff suffers from the following medically determinable severe impairments: tinnitus, bilateral hearing loss, ectodermal dysplasia with dry eye syndrome, status-post bilateral eye surgeries. (AR 16). The ALJ found no medically determinable impairment of patellofemoral pain syndrome of the left knee, paresthesia of the left upper extremity, and anxiety. (AR 16). The ALJ concluded Plaintiff's squamous cell carcinoma of the left upper medial thigh, lower urinary tract infectious disease, obesity, and premature ventricular contractions were non-severe. (AR 16-17).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 17). The ALJ next found Plaintiff retained the Residual Functional Capacity (RFC) for a full range of work at all exertional levels with the following nonexertional limitations:

> except the claimant can never climb ladders, ropes or scaffolds. The claimant can have occasional exposure to extreme cold. The claimant must avoid all exposure to extreme heat. He must avoid concentrated exposure to irritants

**MEMORANDUM DECISION AND ORDER – 3**

such as fumes, odors, dusts and gases. He must avoid all exposure to unguarded moving mechanical parts (i.e. table saws, band saws or exposed mechanical gears) and unprotected heights. The claimant is limited to indoor work. He is limited to jobs that allow him to don and wear sunglasses or protective goggles at his own discretion. The claimant is limited to a work environment that has no more than a moderate noise level, as defined by the Selected Characteristics of Occupations.

(AR 18).

At step four, the ALJ found Plaintiff was able to perform past relevant work as a programmer as described in the Dictionary of Occupational Titles (DOT). (AR 22). The ALJ found at step five, in addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that Plaintiff also can perform considering his age, education, work experience, and RFC. (AR 22). The ALJ therefore determined Plaintiff was not disabled from the alleged onset date, through the date of the decision, June 15, 2021. (AR 24).

## ISSUES FOR REVIEW

The following issues are raised on appeal:

1. Whether the ALJ appropriately evaluated the persuasiveness of the medical opinions.

2. Whether the ALJ properly assessed Plaintiff's subjective symptom statements.

3. Whether there was substantial evidence to support the ALJ's RFC assessment.

## STANDARD OF REVIEW

On review, the Court is instructed to uphold the final decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*,

**MEMORANDUM DECISION AND ORDER – 4**

340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that does not support the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Plaintiff's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision

must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). The Court will not reverse the ALJ's decision if it is based on harmless error, which exists where the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal marks and citations omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1117-22 (9th Cir. 2012).

## DISCUSSION

### 1. Medical Opinion Evidence

Plaintiff asserts the ALJ erroneously evaluated the medical opinions of Dr. Vestal, Dr. Cusack, and Dr. Barrett. (Dkt. 12 at 5). Defendant argues the ALJ reasonably assessed the persuasiveness of the medical opinions based on their supportability and consistency with the record. (Dkt. 13 at 5-7).

#### a. Legal Standard

New regulations governing an ALJ's evaluation of medical opinion evidence apply to claims filed on or after March 27, 2017. *See* Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the new regulations, the ALJ is no longer required to give deference to any medical opinion, including treating source opinions. *Id.* § 404.1520c(b)(2); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (ALJs no longer need to "provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion."). Instead,

**MEMORANDUM DECISION AND ORDER – 6**

the ALJ evaluates the persuasiveness of the opinions based on several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* (quoting 20 C.F.R. § 404.1520c(c)(2)).

Under this framework, the ALJ is required to articulate how persuasive they find the evidence and explain how the supportability and consistency factors were considered. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, explain how the other persuasive factors in paragraphs (c)(3) through (c)(5) were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other persuasive factors were considered. 20 C.F.R. § 404.1520c(b)(3). The ALJ's persuasiveness determination under the revised regulations must be supported by substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

**MEMORANDUM DECISION AND ORDER – 7**

In fashioning a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical records, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted). The ALJ is not obligated to discuss every piece of evidence when interpreting the evidence and developing the record; nor is he required to discuss every word of a medical opinion or include limitations not assessed by a medical source. *Edwin C. v. Kijakazi*, No. 5:20-cv-2478-MAR, 2021 WL 7286046, at * 6 (C.D. Cal. Nov. 19, 2021) (citing *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)). "However, the ALJ must discuss significant and probative evidence that is contrary to the ALJ's findings and explain why it has been rejected." *Id.* (first citing *Robbins*, 466 F.3d at 883; then citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)).

With the above considerations in mind, the Court now turns to the ALJ's evaluation of the medical opinions.

### b.  Agency Consultants

#### i.  Dr. Vestal

On October 24, 2019, State Agency Medical Consultant Robert Vestal, M.D., reviewed Plaintiff's medical records and determined that Plaintiff had no exertional limitations. (AR 67). With regard to Plaintiff's postural limitations, Dr. Vestal found Plaintiff can never climb ladders, ropes, or scaffolds (AR 67). Dr. Vestal found Plaintiff's visual limitations included limited far acuity on the left side. (AR 68). Further, Dr. Vestal found Plaintiff had a communicative limitation due to diminished hearing in his left ear.

Concerning Plaintiff's environmental limitations, Dr. Vestal found that Plaintiff was limited to avoiding concentrated noise exposure and avoiding all exposure to hazards. (AR 69).

Dr. Vestal opined that medical records support that Plaintiff has a congenital condition known as ectodermal dysplasia[3], and mentions he had treatment for dry eyes and a left corneal abrasion and nodules that are improved by prescription treatment. (AR 66). Dr. Vestal considered medical records spanning from April 2017 through August 2019, noting that in January 2019 Plaintiff was seen for corneal evaluation for Salzmann's nodular dystrophy, for which Plaintiff was prescribed multiple medications. (AR 69). Dr. Vestal noted in March 2019, that Plaintiff's visual acuity had improved, he could read his computer better, and was compliant with the prescriptions. (AR 69). Further, Dr. Vestal considered Plaintiff's own testimony that he has no problems with personal care, preparing meals, and doing yard work as long as it is not too hot. (AR 69). Plaintiff also stated he gets outside daily, walks, drives, rides his bike, and shops. (AR 69).

Dr. Vestal found that Plaintiff's condition resulted in some limitations, but those limitations did not prevent him from performing work he had done in the past as a programmer. (AR 71).

---

[3] "Ectodermal dysplasias are disorders that affect the skin, sweat glands, hair, teeth, and nails. Some individuals with ED may also have cleft lip and/or palate. ED can additionally cause problems with the immune system as well as hearing and vision." *Ectodermal Dysplasia*, National Institute of Dental and Craniofacial Research (Sep. 2021), https://www.nidcr.nih.gov/health-info/ectodermal-dysplasia#:~:text=Back%20to%20top- ,Overview,well%20as%20hearing%20and%20vision.

**MEMORANDUM DECISION AND ORDER – 9**

### ii. Dr. Cusack

On January 29, 2020, State Disability Determinations consultant Barry Cusack, M.D., reviewed Plaintiff's medical records and determined that Plaintiff did not have any exertional limitations. (AR 79).

Dr. Cusack found that Plaintiff has a postural limitation of never climbing ladders, ropes, or scaffolds due to his decreased vision relating to corneal dystrophy in his left eye, which effected his ability to see fine print details and decreased hearing. (AR 79). Dr. Cusack determined Plaintiff has some visual limitations in his left eye in relation to far acuity and accommodation, stating he should be limited to occasional detailed tasks and object identification. (AR 79-80). Dr. Cusack found Plaintiff had some communicative limitations for hearing in both ears due to hearing loss on his left ear and restricted hearing on the right. (AR 80). Plaintiff was also found to have environmental limitations in that he should avoid concentrated exposure to extreme heat or cold, avoid even moderate exposure to noise, and avoid even moderate exposure to hazards. (AR 80).

Dr. Cusack concluded that while Plaintiff has a history of ectodermal dysplasia and manages his life around it, the condition is not disabling. (AR 82). Dr. Cusack determined that based on updated records of Plaintiff's visual acuity, Plaintiff would not be able to return to his previous work as a programmer. (AR 82-83). The visual acuity demands of working as a programmer would exceed Plaintiff's RFC. (AR 82-83). However, Dr. Cusack found Plaintiff was not precluded from performing other work that is less visually demanding. (AR 85).

### iii.  The ALJ's Decision

The ALJ found persuasive the opinions of Dr. Vestal and Dr. Cusack, as follows:

> The undersigned deems the prior administrative findings by Robert Vestal, MD; and Barry Cusack, MD, regarding the claimant having no exertional limitations as well as the claimant's postural limitation and some of the environmental limitations, as noted in claimant's residual functional capacity, persuasive. For instance, Drs. Vestal and Cusack relied on the claimant's subjective complaints of generalized pain and vision difficulties to support their opinions (Exhibits 2A and 4A). Additionally, Drs. Vestal and Cusack relied on the abnormal vision findings and the claimant's bilateral eye surgeries in late 2019 to support their opinions. The undersigned finds more restrictive limitations are not supported by the normal vision findings after December 2019, nor consistent with the claimant's vast activities of daily living, discussed above.

> The medical consultants are non-treating, non-examining medical sources. Their opinions are based upon a thorough review of the available medical record and a comprehensive understanding of agency rules and regulations. The undersigned finds these opinions internally consistent and well supported by reasonable explanation and the available evidence. As such, the undersigned finds these opinions persuasive. . ..

(AR 21). The ALJ further concluded that additional limitations were warranted by new medical evidence and Plaintiff's testimony, which Drs. Vestal and Cusack did not have the opportunity to consider. (AR 21).

### iv.  Analysis

Plaintiff argues the ALJ erred in his evaluation of the medical opinions of the agency consultants because it was not supported by substantial evidence. (Dkt. 12 at 5-6). Plaintiff states that neither Dr. Vestal nor Dr. Cusack addressed Plaintiff's dry eye syndrome. (Dkt. 12 at 6).  However, the record reflects that both doctors noted Plaintiff's diagnosis of ectodermal dysplasia and the records showing Plaintiff received treatment for dry eye. (AR 66, 77). Dr. Cusack stated specifically regarding Plaintiff's ectodermal

dysplasia, "history of this condition, [claimant] manages life around it, but not disabling." (AR 82). Neither doctor opined that Plaintiff had any greater limitations than what the ALJ concluded in the RFC. Importantly, the ALJ discussed the persuasiveness factors of supportability and consistency in his evaluation of Drs. Vestal and Cusack's opinions, as required under the regulations. (AR 21). The ALJ found Plaintiff's limitations as opined by the agency doctors to be persuasive as they relied on Plaintiff's abnormal vision findings and subjective complaints. (AR 21). The ALJ found the agency doctors thoroughly reviewed Plaintiff's medical records that were available at the time of their evaluations. (AR 21). Further, the ALJ found the agency doctors' opinions to be internally consistent and well supported. (AR 21).

For these reasons, the Court finds the ALJ's conclusion that both doctors' opinions were persuasive is supported by substantial evidence. The opinions were consistent with Plaintiff's medical records and subjective symptom complaints available at the time of the evaluations.

### c.  Dr. Barrett

On December 11, 2020, Ryan Barrett, M.D., Plaintiff's treating ophthalmologist, wrote a letter explaining Plaintiff's ectodermal dysplasia with dry eye symptoms. (AR 988). Dr. Barrett stated that Plaintiff's ectodermal dysplasia is a fairly rare diagnosis, so his discussion of Plaintiff's condition in relation to his ability to do different activities is based on medical reasoning of how he would expect someone's eyes as dry as Plaintiff's to respond, and Plaintiff's particular symptoms and limitations, rather than specific studies in the literature. (AR 988).

**MEMORANDUM DECISION AND ORDER – 12**

Dr. Barrett explained that ectodermal dysplasia's affect on the eyes results in zero eyelashes and essentially zero ability to make tears, which causes exceedingly dry eyes and the inability to protect the eyes from dust and ambient lighting. (AR 988). Dr. Barrett opined that Plaintiff's ectodermal dysplasia has caused "tremendous" dry eyes, decreased vision, constant eye irritation, and light sensitivity. It also caused neurotrophic keratitis resulting in the development of scars and nodules on his corneas, which Dr. Barrett surgically removed in 2019, but stated are at risk of coming back. (AR 988).

Dr. Barrett directed Plaintiff to treat his dry eyes with warm compresses twice daily, medicated eye drops twice a day, ointment at nighttime, and frequent artificial tears throughout the day. (AR 988). Dr. Barrett opined that Plaintiff would struggle with a lot of everyday situations, including using a computer, because studies show people blink less when looking at a computer screen, and with fewer blinks Plaintiff's eyes would dry out even further. (AR 988). Dr. Barrett concluded that Plaintiff would need to use a computer for a limited amount of time (possibly 10 to 30 minutes), take frequent breaks, and use frequent artificial tears during computer usage. (AR 988). Dr. Barrett also stated even with these limitations, continued computer usage could worsen Plaintiff's dry eyes and contribute to the return of his corneal scarring. (AR 988). Dr. Barrett continued, stating that Plaintiff is very sensitive to low humidity environments, overhead lighting, and dusty environments. (AR 988-89). Dr. Barrett concluded that at times, Plaintiff must use eye drops every 20 to 30 minutes. (AR 989).

### i.    The ALJ's Decision

The ALJ found Dr. Barrett's opinion unpersuasive, stating:

The undersigned finds the opinion of Ryan Barrett, MD, regarding the claimant being able to use a computer for 10-30 minutes at a time with the need for frequent breaks to use artificial tears while using the computer, unpersuasive. The undersigned notes that Dr. Barrett's opinion is speculative as he relied on the possibility of the claimant redeveloping scars and nodules in the bilateral eyes to support his opinion (Exhibit 16F). Additionally, Dr. Barrett's opinion is inconsistent with his benign vision examination findings in November 2020, where the claimant had 20/30 vision in the right eye and 20/50 vision in the left eye, respectively. Moreover, Dr. Barrett's opinion is inconsistent with the claimant's activities of daily living and the claimant not using corrective lenses or contact lenses for his vision impairment.

(AR 21-22).[4]

### ii.   Analysis

First, the ALJ found Dr. Barrett's opinion regarding computer usage to be unpersuasive, in part because the opinion was "speculative, as he relied on the possibility of the claimant redeveloping scars and nodules. . .." (AR 21). The Court finds the ALJ's conclusion on that point is not supported by the record. Dr. Barrett's letter discussed in detail how Plaintiff's ectodermal dysplasia resulting in severe dry eyes affects his ability to work at a computer. Dr. Barrett stated Plaintiff could likely only use the computer for 10 to 30 minutes at a time due to his dry eye condition, and needed regular breaks to use artificial tears as treatment. (AR 988). Dr. Barrett stated that continued computer usage would likely worsen Plaintiff's dry eyes which could contribute to the development of

---

[4] Dr. Barrett also opined that Plaintiff was unable to engage in heavy lifting activities for two weeks. (AR 22). The ALJ found this portion of the opinion unpersuasive as it was a temporary limitation following cataract surgery in his left eye in October 2019, and is not indicative of a permanent restriction of Plaintiff's exertional limitation. (AR 22). Plaintiff does not contest the ALJ's evaluation of that portion of the opinion, and therefore the Court will not address it. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008).

**MEMORANDUM DECISION AND ORDER – 14**

scarring. That statement is consistent and supported by Dr. Barrett's prior clinical observation and treatment of Plaintiff. Dr. Barrett's records reported that Plaintiff's chronic severe dry eye resulted in Plaintiff developing scars and nodules, which Dr. Barrett removed in 2019, and are at risk of coming back. (AR 988; 469-515). Thus, Dr. Barrett's statement was not speculative. Rather, it was based on Plaintiff's prior medical history and Dr. Barrett's own treatment of Plaintiff. Thus, the ALJ's conclusion that Dr. Barrett's opinion was speculative is not supported by the record.

Next, the ALJ found Dr. Barrett's medical opinion regarding Plaintiff's computer usage inconsistent with his benign vision examination findings in November 2020, where claimant had 20/30 vision in his right eye and 20/50 vision in his left eye. (AR 21). The Court finds the ALJ's conclusion is not supported by the record. While Dr. Barrett noted the results of the November 2020 vision exam, his opinion that Plaintiff would require a limited amount of time on a computer with frequent breaks and the use of artificial tears was based on Plaintiff's severe dry eyes, not his visual acuity. (AR 988). Indeed, Dr. Barrett stated that despite Plaintiff's visual acuity in November 2020, he still had significant dryness in both eyes and irritation that required frequent attention. (AR 988).

Finally, the ALJ found Dr. Barrett's opinion inconsistent with Plaintiff's activities of daily living and not using corrective lenses or contact lenses for his vision impairment. (AR 21-22). Again, Dr. Barrett's opinion that Plaintiff struggles with a lot of everyday situations, including computer usage, is based on Plaintiff's ectodermal dysplasia causing severe dry eye, not a visual impairment that may or may not require corrective or contact lenses. (AR 988). The fact that Plaintiff did not need corrective lenses and was able to

**MEMORANDUM DECISION AND ORDER –** 15

engage in many regular activities of daily living is consistent with the limitations opined by Dr. Barrett related to his dry eye condition.

In sum, the ALJ's assessment of Dr. Barrett's opinion – as speculative and lacking consistency – is not supported by substantial evidence. The Court finds the ALJ erred in evaluating the opinion of Dr. Barrett. However, as discussed in greater detail below, the Court finds this error to be harmless.

## 2. Plaintiff's Subjective Symptom Allegations

Plaintiff argues the ALJ erred when he dismissed Plaintiff's subjective symptom statements without providing clear and convincing reasons. (Dkt. 12 at 10). Defendant argues the ALJ's reasoning for dismissing Plaintiff's subjective symptom statements was sufficiently specific and substantial evidence supports it. (Dkt. 13 at 2).

### a. Legal Standard

The ALJ evaluates a claimant's testimony about the severity and limiting effects of the claimant's symptoms by engaging in a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison*, 759 F.3d at 1014-15; 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing this, "the claimant need not show that [his or] her impairment could reasonably be expected to cause the severity of the symptom [he or] she has alleged; [he or] she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ's reasoning must be be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

When evaluating the intensity and persistence of symptoms, the Commissioner requires that the ALJ consider all the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029 at *1-2.[5] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p at *4.

In addition, the Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the

---

[5] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo*, 871 F.3d at 679 n.5.

**MEMORANDUM DECISION AND ORDER – 17**

location, frequency and duration of symptoms, the impact of the symptoms on daily

living activities, factors that precipitate and aggravate symptoms, medications and

treatments used, and other methods used to alleviate symptoms; (2) medical source

opinions, statements, and medical reports regarding the claimant's history, treatment,

responses to treatment, prior work record, efforts to work, daily activities, and other

information concerning the intensity, persistence, and limiting effects of an individual's

symptoms; and (3) non-medical source statements, considering how consistent those

statements are with the claimant's statements about his or her symptoms and other

evidence in the file. *See id*. at *6-7.

### b. The ALJ's Decision

Here, the ALJ considered Plaintiff's subjective symptom testimony in the context

of the objective medical evidence, and his activities of daily living, detailed by his

function report and hearing testimony.

> In a function report completed by the claimant in October 2019, he alleges
> his combined symptoms of sensitivity to light, dry eyes, and hearing
> difficulties limits his ability to talk, hear, and see. Additionally, the
> claimant alleged his symptoms limit his ability to leave his home without
> wearing sunglasses, be exposed to dust, be exposed to odors, be exposed to
> heat, and sleep properly (Exhibit 3E). At the hearing, the claimant testified
> his combined symptoms of residual effects of his prior eye surgeries, eye
> straining, vision difficulties, ringing of the bilateral ears, and hearing loss
> limits his ability to engage in certain physical activities in the work setting.
> For instance, the claimant alleged his combined symptoms limits his ability
> to see, hear, talk, do anything for more than two hours, be outdoors for
> prolonged periods, engage an outdoor job, engage in a warehouse job, and
> engage in outdoor activities without the use of goggles or sunglasses. The
> claimant also states he needs two 10-minute breaks to treat his visual
> impairment during the day (Claimant Testimony).

**MEMORANDUM DECISION AND ORDER – 18**

(AR 19). The ALJ found that the objective medical evidence in the record does not fully

support Plaintiff's allegations regarding the inability to engage in all work activity since

his alleged onset date. (AR 19). The ALJ observed that Plaintiff suffered from hearing

loss dating back to 2008 and yet was able to work substantial gainful activity for many

years without the use of hearing aids. (AR 19). In regard to Plaintiff's vision, the ALJ

noted medical records showing his vision was improved following 2019 eye surgeries.

The ALJ concluded that Plaintiff's improved vision, normal physical examination

findings, statements at the hearing, and activities of daily living lends more support to

finding Plaintiff is able to engage in full time work activity. (AR 20).

Regarding Plaintiff's daily activities, the ALJ found as follows:

> Despite the claimant's visual and hearing impairments, the claimant
> was able to engage in robust activities of daily living during the period at
> issue. For instance, in October 2019, the claimant noted he was able to
> perform household chores, ride his bicycle, watch television, read, care for
> pets, handle his personal care independently, prepare meals, perform
> household repairs, walk to get around, drive a motor vehicle, and shop in
> stores (Exhibit 3E). Moreover, the claimant told various medical providers
> he was able to consistently ride his bicycle approximately 20 miles daily,
> play billiards, and renew his driver's license (Exhibits 4F/40, 13F/1,
> 15F/17, 21, 39, 17F/14, 19F/7 & 27). Furthermore, at the hearing, the
> claimant testified he is able to ride his hybrid bicycle two hours a day,
> check the weather forecast daily, and extensively prepare for his daily two-
> hour bicycle ride (Claimant Testimony). His ability to ride his bike daily on
> the Boise River Greenbelt (a multiuse trail) without hearing aids or
> corrective lenses clearly demonstrates that his vision and hearing are not as
> limiting as he alleges.

(AR 20). The ALJ found Plaintiff's medically determinable impairments could

reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements

concerning the intensity, persistence, and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record. (AR 20). The ALJ further concluded Plaintiff's statements regarding his symptoms were inconsistent because they are not supported by the benign vision findings following surgery in 2019, Plaintiff's statements at the hearing, and Plaintiff's robust activities of daily living. (AR 21).

### c. Analysis

Plaintiff argues the ALJ did not provide clear and convincing reasons to disregard Plaintiff's testimony. (Dkt. 12 at 10). More specifically, Plaintiff contends the ALJ failed to explain how objective medical evidence undermined Plaintiff's symptom allegations, and that the ALJ did not explain how Plaintiff's daily activities undermined his subjective symptom testimony. (Dkt. 12 at 12-13).

Plaintiff is correct that the ALJ cannot discredit Plaintiff's subjective symptom testimony on the sole basis that it is not substantiated by objective medical evidence; instead, it is "one of the many factors [the] ALJ must consider in evaluating" Plaintiff's testimony. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005); SSR 16-3p at *5 ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual. A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms.").

The Court finds the ALJ provided clear and convincing reasons for dismissing Plaintiff's subjective symptom complaints. The ALJ does not solely rely on the medical evidence but states the rejection of Plaintiff's subjective symptom statements is based on medical evidence (including improved vision findings and normal physical examinations), Plaintiff's statements at the hearing, and Plaintiff's activities of daily living. (AR 20). In so doing, the ALJ specifically identified the evidence that undermined the severity of Plaintiff's subjective symptom testimony and discussed the evidence that contradicted his testimony. "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation ... and those findings are supported by substantial evidence in the record, [the Court's] role is not to second-guess that decision." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The Court further finds the ALJ sufficiently explained how Plaintiff's activities of daily life undermined his subjective symptom testimony. The ALJ noted a myriad of activities that Plaintiff participated in despite his symptom testimony, including performing household chores and repairs, riding his bike, watching television, reading, caring for pets, preparing meals, handling personal care, walking, driving, and shopping. (AR 20, 245-48). The ALJ points specifically to what Plaintiff told various medical providers, including that he could ride his bike for 20 miles, play billiards, and renew his driver's license. (AR 20). The ALJ found that Plaintiff's ability to ride his bike daily on the Boise Greenbelt demonstrates that his vision and hearing are not as limited as Plaintiff alleges. (AR 21). Plaintiff argues this finding by the ALJ does not address his

dry eye symptoms. (Dkt. 12 at 13). However, Plaintiff's comprehensive daily activities are inconsistent with Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms.

The ALJ identified clear and convincing reasons to discredit Plaintiff's statements. The ALJ explained his reasoning in concluding Plaintiff's subjective symptom testimony was inconsistent with the medical evidence in the record, statements at the hearing, and activities of daily life. Accordingly, the Court finds that substantial evidence supports the ALJ's conclusion.

### 3. RFC Determination and Step Four

#### a. Legal Standard

Residual functional capacity (RFC) is "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). The Commissioner assesses the claimant's RFC between Steps Three and Four. *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017); 20 C.F.R. § 404.1520(a)(4). In determining the RFC, the ALJ must identify the claimant's functional limitations or restrictions and assess the claimant's work-related abilities on a function-by-function basis. 20 C.F.R. § 404.1545; SSR 96-8p. The ALJ must consider the limiting effects of all of the claimant's impairments, including those that are not severe, in assessing the RFC. 20 C.F.R. § 404.1545(e); SSR 96-8p.

Then, at Step Four, the Commissioner must determine whether a claimant has sufficient RFC to perform their past work; and, if so, the claimant is not disabled and the claim must be denied. 20 C.F.R. § 404.1520(a)(4)(iv). The claimant has the burden of proving that he or she cannot return to their past relevant work as actually or generally performed. 20 C.F.R. § 404.1520(f); *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002); *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). Although the burden of proof lies with the claimant, the ALJ must still make factual findings supporting the Step Four conclusion. *Pinto*, 249 F.3d at 844. In particular, the ALJ must make "specific findings" as to the claimant's RFC, "the physical and mental demands" of the past relevant work, and whether the RFC would permit a return to past work. *See id*. at 845; *accord Ocegueda v. Colvin*, 630 F. App'x 676, 677 (9th Cir. 2015).

### b.  Analysis

Plaintiff argues the ALJ's RFC assessment was not supported by substantial evidence because the ALJ failed to include all of Plaintiff's functional limitations. (Dkt. 12 at 14). Namely, that his severe dry eye syndrome limited him from any exposure to fumes, odors, dust, or gases; restricted his ability to use a computer to no more than ten to thirty minutes at a time; and required frequent breaks to treat his eyes. (Dkt. 12 at 15). Further, Plaintiff contends the ALJ's conclusion that Plaintiff could maintain full-time competitive work if he wore sunglasses or protective goggles was not supported by any medical opinion. (Dkt. 12 at 14, 16). Instead, Plaintiff asserts that the ALJ "played doctor" in determining that jobs were available so long as Plaintiff was able to wear sunglasses or goggles. (Dkt. 14 at 6-7). Defendant maintains that Plaintiff's own

testimony, combined with the agency opinions, is ample support for the ALJ's RFC

determination and conclusion that Plaintiff could return to his past job or, alternatively,

that there are other jobs available in the national economy that he could perform. (Dkt. 13

at 6, 8-9).

A claimant's RFC is not a medical opinion, but is an issue decided by the ALJ. 20

C.F.R. § 404.1546(c); *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th

Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings

into a succinct RFC."). The RFC assessment is an administrative finding based on all

relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d

1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all

limitations, severe and non-severe, that are credible and supported by substantial

evidence in the record. *Bayliss*, 427 F.3d at 1217 (RFC determination will be affirmed if

supported by substantial evidence). The ALJ evaluates medical and other source

opinions, as well as the claimant's credibility. *See e.g., Bray*, 554 F.3d at 1226.

However, the ALJ is not required to adopt the findings or opinion of a physician,

and the ALJ may reject a medical source opinion that is unsupported by objective

medical evidence or is inconsistent with evidence from other sources. 20 C.F.R. §

404.1520c(a) (We "will not defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s) or prior administrative medical finding(s),

including those from your medical sources."). Thus, the ALJ's RFC finding need not

directly correspond to a specific medical opinion but may incorporate the opinions by

assessing limitations consistent with, even if not identical to, the relevant limitations

assessed by the physician. *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (the ALJ properly incorporates medical findings by assessing limitation that are "entirely consistent" with a physician's limitations).

Ultimately, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician to determine [RFC]"). Nevertheless, "[t]he ALJ must set out in the record his [or her] reasoning and the evidentiary support for his interpretation of the medical evidence." *Tackett*, 180 F.3d at 1102 (citation omitted). The Court reviews the ALJ's assessment of the RFC limitations to determine whether they are supported by substantial evidence in the record. *See e.g.*, *Kaur v. Kijakazi*, 2023 WL 4209762, at *6 (E.D. Cal. June 27, 2023).

Here, the ALJ found the medical opinions of the state agency medical consultants persuasive. However, the ALJ assessed additional limitations to those contained in the consultants' opinions based on Plaintiff's subjective complaints and symptom testimony regarding the effects of his dry eyes and the additional medical evidence, neither of which the consultants had an opportunity to review. (AR 21.) Plaintiff argues the ALJ erred by incorporating the additional unsupported limitation of wearing sunglasses or protective goggles; by failing to include a greater limitation that he avoid all exposure to irritants; and by not incorporating the limitations on computer use and frequent breaks as opined by Dr. Barrett. For the reasons that follow, the Court finds no harmful error in the ALJ's RFC assessment.

As to the requirement that Plaintiff be able to don sunglasses or protective goggles, Plaintiff claims error because there is no medical opinion supporting the ALJ's conclusion that he could maintain full-time work if he wore glasses or goggles. The Court disagrees. "The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds*, 807 F.3d at 1006. Based on the ALJ's evaluation of the evidence, including Plaintiff's symptom statements and testimony, the ALJ reasonably included a limitation in the RFC that Plaintiff work at a job that allowed him to wear sunglasses or goggles. (AR 18-19.) Particularly, when coupled with the limitation that Plaintiff avoid concentrated exposure to irritants such as fumes, odors, dusts, and gases. (AR 18.)

While medical records report Plaintiff experienced continuing eye dryness especially after riding his bike while wearing goggles, Plaintiff nevertheless testified that he was able to ride his bike while wearing goggles for two hours several times a week. (AR 42-45); (AR 550, 552) (Medical record dated July 21, 2020 by Dr. Jason Besecker).[6] Further, the ALJ observed that Plaintiff cared for pets and performed household repairs, but required the use of goggles or sunglasses to engage in outdoor activities. (AR 17, 19, 20.) The Court finds the records discussed in the written decision are substantial evidence supporting the ALJ's decision to include the RFC limitation for glasses and goggles.

---

[6] Further, there is at least one other medical record supporting a restriction to jobs that allow Plaintiff to wear glasses or goggles to address his dry eyes. (AR 518) (Medical record dated January 9, 2020 by Dr. Dylan Hatfield recommending "to wear glasses/goggles when biking and should not make dryness worse long term."). Because the ALJ did not discuss or cite to this record in the written decision, the Court has not relied on the record in its review of the ALJ's decision. The record is noted here only for completeness.

Further, the limitation to work that allowed Plaintiff to wear sunglasses or protective goggles assessed by the ALJ only benefited Plaintiff. *See Nacoste-Harris v. Berryhill*, 711 Fed. Appx. 378, 379-80 (9th Cir. 2017) (no reversible error from "an ALJ's inclusion of additional RFC limitations that benefits, rather than prejudices," the claimant). Even if the limitation regarding sunglasses or goggles in the RFC was in error, the limitation was overinclusive of the limitations that would be expected of Plaintiff's medically determinable impairments and, therefore, was harmless error. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n. 9 (9th Cir. 1995) (an ALJ's "overinclusion of debilitating factors is harmless" because it benefits the claimant); *Nacoste-Harris*, 711 F. Appx. at 379-80 (no reversible error from an ALJ's inclusion of additional RFC limitations that benefits, rather than prejudices, the claimant). Therefore, Plaintiff has not shown the ALJ erred by including an RFC limitation greater than those identified in the medical opinions.

As to the limitation on exposure to irritants, the Court finds the ALJ properly considered the entire record and rationally concluded that Plaintiff's impairments warranted a limitation on concentrated exposure, rather than any exposure. In fashioning the RFC, the ALJ limited Plaintiff to exposure to concentrated irritants based on materials in the record submitted following the consultants' opinions - Plaintiff's testimony and medical records. (AR 18, 21.) While the ALJ did not identify particular records in his discussion, the ALJ's reasoning can be reasonably discerned when viewing the decision as a whole. *See Brown-Hunter*, 806 F.3d at 492 (Harmless error where "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal

**MEMORANDUM DECISION AND ORDER – 27**

clarity.") (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)); *Molina*, 674 F.3d at 1121.

Throughout the written decision, the ALJ consistently refers to Plaintiff's statements and testimony that he was able to ride his bicycle up to two hours; perform household chores; and care for pets; but that his symptoms required that he limit his exposure to dust, odors, heat, jobs performed outdoors or in a warehouse, and outdoor activities without the use of goggles or sunglasses. (AR 17, 19-21.) The ALJ relied on Plaintiff's "robust" daily activities to support his RFC assessment, evaluation of the medical opinions, and conclusion that limitations other than those assessed in the RFC were not warranted. (AR 20-22.) Ultimately, the ALJ found Plaintiff's testimony demonstrated that his impairments required limited exposure to concentrated odors, dust, and fumes, but that Plaintiff remained able to engage in "robust" daily activities.

The Court finds the ALJ's decision is rational and supported by the record given Plaintiff was able to tolerate some exposure to irritants in his daily activities and, therefore, did not demand an RFC limitation that eliminated all exposure to irritants. Plaintiff has not identified evidence demonstrating that his impairments required that he never be exposed to irritants. Rather, Plaintiff views the record differently from the ALJ, which is not a basis for remand. *See Molina*, 674 F.3d at 1111 (Where the evidence "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by [substantial evidence in] the record.").

As to the limitations opined by Dr. Barrett, as discussed above, the ALJ erred in discrediting Dr. Barrett's opinion that Plaintiff's dry eyes limited his ability to use a

computer for more than thirty minutes and required frequent breaks. Had the limitations on computer use been included in the RFC, the ALJ would not have concluded at Step Four that Plaintiff could perform his past work as a programmer as he would have been unable to perform the essential functions of that job. *See* DOT 959.167-010 (programmer). However, as discussed below, the ALJ's error in this regard was harmless because the ALJ proceeded to Step Five and determined other jobs existed in the national economy that Plaintiff could perform which do not require using a computer.

As to the need for frequent breaks, the ALJ properly addressed that limitation in his questions to the Plaintiff and vocational expert during the hearing, and in the written decision. (AR 18-19, 22, 45, 54-60) (explaining that the standard workday breaks would be sufficient time for Plaintiff to treat his eyes in two ten-minute breaks per day). The Court finds substantial evidence supports the ALJ's decision to not include a limitation for time off task. Again, that Plaintiff has a different interpretation of the record as it relates to the need for frequent breaks or time off task, does not warrant remand. *Molina*, 674 F.3d at 1111.

In sum, the Court finds the ALJ did not commit harmful error in assessing Plaintiff's RFC. The Court disagrees with Plaintiff's contention that the ALJ erred by "playing doctor." (Dkt. 12 at 14-15.) The ALJ may not arbitrarily substitute his or her own judgment for competent medical opinion, make independent medical findings, or assess an RFC that is not supported by the medical evidence. *Tackett*, 180 F.3d at 1102-03 (ALJ may not substitute his own interpretation of the medical evidence for the opinion of medical professionals); *Padilla v. Astrue*, 541 F.Supp.2d 1102, 1106 (C.D. Cal. 2008)

**MEMORANDUM DECISION AND ORDER – 29**

("[A]s a lay person, an ALJ is 'simply not qualified to interpret raw medical data in functional terms.'"); *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006) (An ALJ cannot arbitrarily substitute his or her own judgment for competent medical opinion, and must not "succumb to the temptation to play doctor and make [his or her] own independent medical findings."). Thus, an ALJ may not act as their own medical expert because they are "simply not qualified to interpret raw medical data in functional terms." *Allison R. v. Kijakazi*, 2023 WL 2721459, at * 5 (C.D. Cal. March 29, 2023) (quoting *Rivera v. Berryhill*, 2017 WL 5054656, at *4 (C.D. Cal. Oct. 31, 2017) and (citing other cases).

However, "the absence of a medical opinion is not necessarily fatal, [so long as] the RFC determination [is] supported by substantial evidence." *Id.* (citing *Tackett*, 180 F.3d at 1102-03 (ALJ must provide evidentiary support for his interpretation of medical evidence)). "The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence." *Jamie v. Kijakazi*, 2023 WL 2466196, at * 7 (E.D. Cal. March 10, 2023) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The ALJ does not commit legal error by assessing an RFC that is consistent with the record. *Id.*

Here, the ALJ did not improperly make an independent interpretation of raw medical data to fashion the RFC limitations - in particular, the limitations of exposure to concentrated irritants and wearing sunglasses or goggles. Rather, the ALJ fashioned an RFC based on a reasonable interpretation of the evidence record. As discussed above, the ALJ explained the reasons and bases for the limitations assigned in the RFC, including

Plaintiff's own statements and testimony, daily activities, the objective medical evidence, and the medical opinions. (AR 20-21.) While the ALJ's explanation could have been clearer, the Court can easily discern the ALJ's reasoning and finds it is supported by substantial evidence.

### 4. Step Five

At Step Five, the ALJ alternatively found other jobs existed that Plaintiff could perform given his limitations. "[I]f a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work" available in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. *Burch*, 400 F.3d at 679; *see also* 20 C.F.R. § 404.1520(a)(4)(v); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The Commissioner may satisfy this burden through the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

A vocational expert may testify as to: "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." *Tackett*, 180 F.3d at 1102. "At the hearing, the ALJ poses hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration." *Id.* In doing so, "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Id.*

The ALJ may not disregard medical evidence or substitute their own interpretation of the medical evidence over the opinion of medical sources. *Id.* at 1102-1103.

Where an ALJ errs at Step Four, the Court considers whether the error is harmless when the ALJ made alternative findings at Step Five. *See Tommasetti*, 533 F.3d at 1044 ("[A]lthough the ALJ erred at step four in finding that Tommasetti could perform his past work, this error was harmless because the ALJ properly concluded as an alternative at step five that he could perform work in the national and regional economies."). "Courts have found harmless error where a [vocational expert] testified there are other jobs which exist in significant numbers in the national economy that Plaintiff could perform, and the ALJ did not actually proceed to make a step five determination." *Lazar v. Comm'r of Soc. Sec.*, 2022 WL 4667145, at *6 (E.D. Cal. Sept. 30, 2022) (citing cases).

Here, the ALJ relied on the vocational expert's testimony in concluding Plaintiff could perform the requirements of three representative occupations: Industrial Cleaner, DOT 381.687-018; Bagger, DOT 920.687-014; and Hospital Cleaner, DOT 323.687-010. (AR 22-23, 50-59). Plaintiff contests the ALJ's Step Five determination, based on the same arguments raised above concerning the RFC limitations for goggles and sunglasses, and exposure to concentrated irritants. (Dkt. 12, 14.) However, as stated above, the Court finds the ALJ's assessment of those limitations was properly explained and supported by the record. (AR 52-54).[7]

---

[7] The ALJ's error with regard to Dr. Barrett's opinion and the failure to include an RFC limitation on Plaintiff's ability to use a computer relates to the ALJ's Step Four finding that Plaintiff could perform his past work. The representative occupations identified by the vocational (Continued)

The vocational expert opined that a person with Plaintiff's limitations, age, education, and experience could perform the three representative occupations. The ALJ properly relied on the vocational expert's opinion in reaching the Step Five determination. *Bayliss*, 427 F.3d at 1217-18 (holding that in order properly to rely on a vocational expert's testimony, the ALJ must present the expert with a hypothetical question that includes all of the limitations that the ALJ finds credible and supported by substantial evidence in the record). The ALJ included the RFC limitations in his hypotheticals to the vocational expert. As to the exposure to irritants, in particular, the vocational expert testified that if the limitation were heightened to preclude any exposure, rather than concentrated exposure, that would eliminate the two cleaning positions and leave only the bagger job. (AR 58-59.) However, the bagger job alone constitutes a representative occupation available in the national economy in significant numbers, which Plaintiff does not contest.[8] Therefore, even if the ALJ erred by including the

---

expert at Step Five do not require use of a computer. Therefore, the error at Step Four was harmless based on the ALJ's alternative Step Five finding. As discussed previously, the ALJ properly addressed the need for frequent breaks and time off task.

[8] Although the Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant number' of jobs," a "comparison to other cases is instructive." *Christine P. v. Comm'r of Soc. Sec. Admin.*, 2021 WL 1649887, at *4 (D.Or. April 27, 2021) (quoting *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (concluding the ALJ erred in finding a significant number of jobs in the national economy existed which had only 135 jobs regionally or 1,680 jobs nationally that the plaintiff could perform); (citing *De Rivera v. Berryhill*, 710 F. App'x 768, 769 (9th Cir. 2018) (finding the vocational expert's testimony of 5,000 conveyor-line bakery worker jobs nationally was not sufficient); *Gutierrez v. Commissioner of Social Security*, 740 F.3d 518, 528-29 (9th Cir. 2014) (concluding 25,000 national jobs was a significant number of jobs and satisfied the Commissioner's burden at Step Five)). "In addition, several district courts in the Ninth Circuit have held between 12,300 and 15,000 jobs is a significant number of jobs." *Id.* (Continued)

limitation to concentrated exposure to irritants, the error was harmless because the bagger job does not required exposure to chemicals or irritants and is available in significant enough numbers.

## CONCLUSION

As discussed above, the Court finds the ALJ did not err in his evaluation of the medical opinion evidence of the agency consultants, Dr. Vestal and Dr. Cusack. While the Court finds the ALJ did err in his evaluation of the medical opinion evidence of Dr. Barrett, such error was harmless because it was inconsequential to the ultimate nondisability determination based on the alternative Step Five finding. The Court further finds substantial evidence supports the ALJ's decision to disregard Plaintiff's subjective symptom testimony as inconsistent with medical records, Plaintiff's statements, and Plaintiff's activities of daily life. Finally, the Court finds the ALJ did not harmfully err determining Plaintiff's RFC. Alternatively, the Court finds no error in the ALJ's alternative Step Five conclusion that other jobs exist in significant numbers in the national economy that Plaintiff can perform.

## **ORDER**

NOW THEREFORE IT IS HEREBY ORDERED:

1)      The Commissioner's decision finding Plaintiff is not disabled within the

meaning of the Social Security Act is AFFIRMED

---

(citing cases). Here, the 174,000 Bagger jobs identified by the vocational expert and the ALJ constitute a significant number of jobs based on the comparative cases.

2)      Judgment shall be ENTERED consistent with the above in favor of

Defendant.

DATED: September 6, 2023

_____
Honorable Debora K. Grasham
United States Magistrate Judge